# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

KATRINA BROWN GILLESPIE,

     Plaintiff,

*v*.                                                   CASE NO. 08-CV-13233

COMMISSIONER OF                      DISTRICT JUDGE BERNARD A. FRIEDMAN
SOCIAL SECURITY,                        MAGISTRATE JUDGE CHARLES E. BINDER

     Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II.    **REPORT**

### A.    **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income benefits.  This matter is currently before the Court on cross-motions for summary judgment.  (Doc. 11, 14, 17.)

Plaintiff was 26 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 37.)   Plaintiff's relevant employment history includes work as an administrative assistant.  (Tr. at 89, 97.)

Plaintiff filed the instant claims on July 6, 2000, on December 29, 2003, and on January 8, 2004 (Tr. at 75, 78, 378) alleging that she became unable to work on June 9, 2000.  The claims were denied at the initial administrative stages.  (Tr. at 56, 59, 60-66.)  In denying Plaintiff's claims, the Defendant Commissioner considered fibromyalgia as a possible basis of disability. (*Id.*)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 52-53), which was held on May 1, 2006, before ALJ Alfred H. Varga.  In a decision issued July 17, 2006, the ALJ denied Plaintiff's claims.  (Tr. at 23-38.)  Plaintiff requested review of this decision. (Tr. at 21.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 3, 2007, when, after the review of additional exhibits[2] (Tr. at 387-95), the Appeals Council denied Plaintiff's request for review.  (Tr.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cline v.*

at 16-18.)   On July 28, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

## B.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990).   The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509

_____

*Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

(6th Cir. 2007). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference

from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

## C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartzyel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq*., and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'"   *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his]

past relevant work . . . ." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse*, 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff sought treatment with Robert Meade, Jr., M.D. and that in March 1999, Dr. Meade referred Plaintiff to M. F. Mass, M.D., F.A.C.P., who noted that Plaintiff complained of "episodes of bluish-white change in her hands with cold exposure [which] may be mild Raynaud's phenomenon." (Tr. at 220.) Dr. Mass also noted that Plaintiff possessed a "full range of motion in all joints," although Plaintiff exhibited "weakness of the lower back muscles." (*Id.*) Dr. Mass concluded that he "agree[d] that she most likely has fibromyalgia syndrome with a possible sleep disorder, questionable Raynaud's phenomenon, [and] no other sign of inflammatory disease." (*Id.*)

In December 2003, Dr. Piazza noted in a report to the Michigan Family Independence Agency that Plaintiff can lift up to five pounds occasionally and that, with Plaintiff's limitations, she could stand or walk 8 hours per day and could sit for 1-2 hours per day. (Tr. at 279.)

C.V. Lazo, M.D., examined Plaintiff in October 2000 at the request of the Disability Determination Service and found her "[g]rip strengths were 5/5 bilaterally[,] [a]rm strengths were 5/5 bilaterally[,] [n]o muscular wasting[,] good ROM [range of motion] of the shoulders, elbows,

wrists and hands with no reported pain to do so[,] no significant impairment of the fine and gross dexterities[,] [and] [t]he patient was able to lift 20 pounds with each hand." (Tr. at 258.) Dr. Lazo also found that Plaintiff was "alert and oriented x3" and that her "[g]ait and station [did] not appear to be impaired." (Tr. at 258.) Dr. Lazo concluded that Plaintiff exhibited "[m]ajor depression and anxiety under inadequate control and possible somatization disorder [and] [f]ibromyalgia with tenderness in the posterior neck, shoulder girdle, lower back and elbows on current exam [although her] ROM is preserved." (Tr. at 259.) A lumbar spine x-ray taken at this same time revealed "[p]rominent lordosis [and] [o]besity, [but noted that] [t]he disc spaces are well maintained [and there was] [n]o fracture or dislocation." (Tr. at 260.)

A range of motion report form indicated that, in October 2000, Plaintiff scored at the top of each normal range for cervical spine, thoracolumbar spine, shoulder, elbow, wrist, hand, hip, knee, ankle/foot, and great toe motion. (Tr. at 261-62.)

Plaintiff was admitted to St. John Hospital in Detroit, Michigan, for acute cholecystitis and gallstones in April 2003. (Tr. at 247, 249.) A laproscopic cholecystectomy, i.e. gallbaldder removal surgery, was performed by Peter D. Kowynia, M.D. (Tr. at 247-48.) Plaintiff completely recovered and the "pathology report reveals a benign diagnosis." (Tr. at 251.)

Approximately three weeks later, Plaintiff was examined by Samir R. Yahia, M.D., who issued a rheumatology consultation report which stated that "[a]ll her joints appears [sic] to have normal range of motion without evidence of swelling, redness or increase [sic] local temperature. . . . She has normal [sic] neurologic examination." (Tr. at 252.) Dr. Yahia concluded that Plaintiff exhibited "[f]ibromyalgia, severe with acute exacerbation most likely brought on by some emotional overlay" and "[n]ervous tension and anxiety." (*Id.*)

Plaintiff worked as an operations specialist for H&R Block from January 2002 until April 2003. (Tr. at 402.)  In May 2003, Plaintiff provided a certification of health care provider form completed by Dr. Piazza indicating that she would need time off from work for an indefinite period of time because of her fibromyalgia. (Tr. at 289.)  In June 2003, with Dr. Piazza's assistance, Plaintiff requested a "reasonable accommodation" under the Americans with Disabilities Act including "extended leave." (Tr. at 294-98, 320.)

In August 2003, Plaintiff underwent an arrhythmia monitoring at the request of Dr. Piazza, which found "sinus rhythm, sinus tachycardia" and noted that the "patient [was] asymptomatic at time of transmission." (Tr. at 300.)  A narrative included at the end of the report indicated that the "patient's average heart rate was 120 BPM" and that "rates greater than 120 BPM were noted 68% of the time." (Tr. at 318.)  "No episodes of bradycardia were noted." (*Id.*)  "No pauses exceeding 2.0 seconds were noted." (*Id.*)  "No ventricular ectopics were noted," nor were any "episodes of ST depression" except for a single episode in "channel 2" with "a maximum depression of -2.8 mm." (*Id.*)

In September 2003, Dr. Piazza referred Plaintiff to Gary L. Miller, D.O., who examined Plaintiff and made the following observations:

> Patient is alert and oriented, but appeared quite flat, sad and depressed.  There is a hint of labile affect.  She was able to follow all simple and complex test commands without difficulty.  A formal mini mental state was not performed.
> . . . .
> Motor Examination.  With encouragement, there was no asymmetrical loss of muscle tone or strength.  Distally, there was a hint of a rachety or 'give-way' type of weakness which improved with encouragement.
> Sensory Examination.  The patient responded in a dramatic fashion to all primary sensory modalities both proximally and distally.
> Cerebellar Examination.  Again, a great deal of reinforcement and encouragement was needed to perform these tests which failed to demonstrate any obvious midline or cerebellar dysfunction.

Deep Tendon Reflexes.  Are physiologically brisk at 2-2.5+/4 and symmetric in the
arms and knees, 2+/4 at the ankles.

(Tr. at 253-54.)  Dr. Miller concluded that Plaintiff exhibited "[c]hronic arthralgias, myalgias,

fatigue and malaise, etiology to be determined." (Tr. at 254.)

In March 2004, at the request of the Disability Determination Service, Shelley Bonanno,

M.A., Limited License Psychologist, completed a psychiatric psychological medical report in

which she noted that Plaintiff's "self-esteem is low" and that "[a]t times, she appeared to

exaggerate her symptoms." (Tr. at 329.)  She further noted that Plaintiff's "stream of mental

activity was spontaneous" and that her "speech was organized and without unusual ideation." (*Id.*)

Plaintiff denied any delusions, hallucinations or obsessions, although she "expressed chronic

feelings of worthlessness."  Ms. Bonanno diagnosed Plaintiff with "311 Depressive Disorder

NOS" and "307.80 Pain Disorder Associated with Psychological Factors." (Tr. at 331.)

In April 2004, at the request of the Disability Determination Service, Plaintiff was examined

by L. Baneri, M.D. (Tr. at 333-35.)  Dr. Baneri noted that Plaintiff is 5'6" tall, weighs 194 pounds,

has "no loss of cervical or lumbar lordosis[,] . . . [that a]ll movements of the cervical spine are

normal and pain free[, and that a]ll movements of the lumbar spine are painful, but only flexion

is restricted to 85 degrees due to gravid uterus." (Tr. at 334.)  Dr. Baneri also noted that Plaintiff

is without pain, swelling or limitation of movement in her joints and that her "[g]rip is good in both

hands (5/5) tested manually." (*Id.*)  Dr. Baneri observed that Plaintiff "[c]an dress and undress,"

her "[m]emory is good," she "[c]an do simple calculations," her speech, cranial nerves, cerebellar

functions, reflexes, and gait are all normal. (Tr. at 335.)  Dr. Baneri concluded that Plaintiff has

an "[a]lleged history of fibromylagia" but that "[t]here is no significant physical findings noted

from this problem during the examination." (*Id.*)  Dr. Baneri found that Plaintiff's "[o]nly

functional limitation []is that she cannot squat more than 50% and has some difficulty in walking tip toe, tandem gait and on the heel due to pain in the knee and hip joints.  She could not stoop down completely, in my opinion, due to obesity." (*Id.*)  In June 2005, Plaintiff was referred to the Chronic Pain Institute in Clinton Township, Michigan.  (Tr. at 353.)

In February 2006, Plaintiff underwent a psychiatric evaluation at Macomb County Community Mental Health conducted by Nora del Busto, M.D.  (Tr. at 362-64.)  Dr. del Busto diagnosed Plaintiff with "Bipolar Disorder Type I, with Psychotic Features, Panic Attacks, PTSD, Chronic."  (Tr. at 364.)

In March 2006, Amar R. Shah, M.D., who had been treating Plaintiff for a year, completed a medical information form, indicating that Plaintiff was able to stand for four hours and sit for two hours during an eight-hour workday and would need to take six to seven fifteen-minute breaks during the day.  (Tr. at 341.)  Dr. Shah also indicated that Plaintiff could occasionally lift ten pounds.  (*Id.*)  Dr. Shah estimated that Plaintiff would need to miss work four or more times a month.  (Tr. at 342.)

The most recent physical Residual Functional Capacity ("RFC") assessment, conducted in April 2004, indicated that Plaintiff could occasionally lift up to ten pounds, frequently lift less than ten pounds, stand or walk for at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday, and possessed an unlimited ability to push or pull, including hand or foot controls.  (Tr. at 180.)  No manipulative, visual, communicative, or environmental limitations were found.  (Tr. at 182-84.)  A mental RFC concluded that Plaintiff is moderately limited in the ability to remember detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable

11

number and length of rest periods.  (Tr. at 187-88.)  In addition, Plaintiff was found to be moderately limited in her ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (Tr. at 188.) All other categories were found "not significantly limited." (*Id.*)  The assessment concluded that Plaintiff "can do simple tasks in a work setting."  (Tr. at 189.)

Plaintiff testified at the administrative hearing that her husband usually drives but that she is able to drive and does so on rare occasions.  (Tr. at 400.)  She also testified that she most recently worked from January 2002 to April 2003 doing data entry for H&R Block and that, in that job, she worked at a computer most of the time but also did some walking and filing.  (Tr. at 401-02.)  She also lifted approximately 25-pound file boxes while working there.  (Tr. at 402.)  She stated that she left work there because she "was in so much pain, and I had so many problems that cropped up, [a]nd my doctors tried to find some way to alleviate it, and there, there was no improvement."  (Tr. at 402.)  She further explained that she "had problems getting out of bed, taking care of basic, basic functions of daily living, . . . I couldn't wash my hair, . . . had problems getting to the toilet.  I felt like an invalid."  (Tr. at 402-03.)  She further testified that she can sit "for about an hour," stand for "about ten minutes" before her knees would weaken and she would fall, that she can walk "on an average day, about 150 yards," but "only 50 yards" on "a bad day." (Tr. at 405.)  She added that after an hour of sitting, "[t]he pain in my back gets very intense" and that the pain also comes in her neck, shoulders, and hips.  (Tr. at 406.)  Plaintiff testified that she does not have any problems bathing, dressing or feeding herself on normal days but on bad days, she does need help bathing, especially washing her hair.  (Tr. at 410.)  She further testified that she does laundry and washes dishes about once a week.  (Tr. at 410.)  In her application, Plaintiff indicated that she grocery shops with her husband and watches television.  (Tr. at 109, 148.)

12

Plaintiff stated that she takes five milligrams of Methadone four times a day for pain.  (Tr. at 407.)  Plaintiff also reported that she takes Darvocet, Cyclobenaprine, Flexeril, Midrin, and Ibuprofen for pain and Doxepin and Ambien as sleep aids.  (Tr. at 93, 105.)  Plaintiff also reported taking Celexa, Zyprexa, and Trileptal for depression. (Tr. at  165.)

At the administrative hearing a Vocational Expert ("VE") also testified.  The ALJ's second hypothetical assumed a person with the same age, education, and work experience as Plaintiff in addition to the following attributes:

> If I made a finding that a person with [Plaintiff's] background could perform no more than sedentary work or a sit-down type job, a job that would never require her to lift over five pounds; in addition, that the jobs not be performed at any unprotected heights, require and driving or climbing or work around dangerous or hazardous machinery; jobs that would be very simple and routine in nature, not requiring more than a very few steps in the completion of the assigned tasks, as well as being low in stress and having limited contact with the public, coworkers, and with supervisors.  What kind of jobs, if any, would fall within the parameters of this hypothetical?

(Tr. at 415.)  The VE responded that "there would be sedentary unskilled work; bench-type operations [5,000 metropolitan area, 9,000 state], packaging, sorting, inspection, and assembly. There'd be some service occupations [7,500 metropolitan area, 14,000 state] as well; gate tender, badge checker, information clerk, and security monitor."  (Tr. at 415-16.)

## E.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim at step one and concluded that Plaintiff met the insured status requirements through December 31, 2008, and that she has not engaged in substantial gainful activity at any time relevant to this decision. (Tr. at 17.)  At step two, the ALJ found that Plaintiff's fibromyalgia, status post cholecystectomy, major depressive disorder, chronic arthralgias, myalgias, fatigue, malaise, obesity, migraine headaches, tempomandibular joint syndrome, Raynaud's Phenomenon, bipolar disorder, pain

13

disorder associated with psychological factors, bipolar disorder Type I with psychotic features, panic attacks, and chronic post traumatic stress disorder were "severe" within the meaning of the second sequential step.  (Tr. at 28.)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Tr. at 30.)  At step four, the ALJ found that Plaintiff could not perform her past relevant work.  (Tr. at 37.)  At step five, the ALJ found that Plaintiff is a younger individual, has the ability to perform a limited range of sedentary work,[3] and has the residual functional capacity to perform the requirements of bench type operations such as assembly, sorting, packaging, and inspection which number 5,000 jobs in the metropolitan area and 9,000 jobs in the State and service-occupations such as gate tender, badge checker, information clerk, and security monitor, which number 7,500 jobs in the metropolitan area and 14,000 in the State of Michigan.  (Tr. at 37-38.)  Therefore, The ALJ found that Plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of the decision.  (*Id.*)

### F.     Analysis and Conclusions

### 1.     Legal Standards

As mentioned, the ALJ determined that Plaintiff possessed the residual functional capacity to undertake a limited range of sedentary work.  (Tr. at 37.)  Sedentary work involves lifting no more than ten pounds at a time and occasional lifting and carrying articles like docket files, ledgers and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R.

---

[3]The ALJ noted that if Plaintiff had the capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28.

14

§ 404.1567(a) (1991).  Social Security Ruling (SSR) 83-10 clarifies this definition and provides that:

> "Occasionally" means occurring from very little up to one-third of the time.  Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.  Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

After review of the record, I first suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

## 2.     Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner.  As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically argues that the ALJ acknowledged that the opinions of treating physicians are entitled to "great weight," but then ignored those same opinions when forming the hypothetical posed to the VE, thereby failing to fully honor the treating physician rule.  (Doc. 11 at 11-14; Doc. 17 at 3-8.)  In addition, Plaintiff argues that the ALJ failed to give sufficient reasons for discounting Plaintiff's credibility.  (Doc. 11 at 14-16.)

Plaintiff correctly notes that controlling weight is only given to the opinions of treating physicians.  A physician qualifies as a treating source if the claimant sees the physician "with a

15

frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502.  "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'"  *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987)).  After review of this record, I suggest that the ALJ accorded proper weight to the opinions of the physicians.

As Plaintiff noted, the opinion of Dr. Vornberger that Plaintiff is disabled is a legal conclusion that is reserved to the Commissioner.  (Doc. 11 at 12.)  Since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner," Dr. Vornberger's conclusion was properly discounted by the ALJ.  *See Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008).  In addition, the ALJ was entitled to accord little weight to a determination that is based mostly on Plaintiff's subjective complaints that the ALJ determines are not fully credible, as discussed below.  *See Bass,* 499 F.3d at 510.

Plaintiff contends that Drs. Piazza and Shah were considered to be treating physicians whose opinions are entitled to controlling weight yet the ALJ's hypothetical failed to do so because fibromyalgia is a "diagnosis of exclusion" and that "essentially normal findings of the doctors are not evidence that fibromyalgia is not disabling."  (Doc. 11 at 11-12; Doc. 17 at 3-4.)  Plaintiff further argues that "normal neurological evaluation only confirms the diagnosis of fibromyalgia as it rules out neurological causes for the pain."  (Doc. 17 at 4.)

If one were to take Plaintiff's argument to its logical conclusion, then any person lacking objective medical evidence of any impairment who claimed to have disabling pain would have proven by omission that they suffer from fibromyalgia, and should be considered disabled.  The

law does not provide for such a conclusion.  Although "fibromyalgia symptoms are often not supported by objective medical evidence . . . a *diagnosis* of fibromyalgia does not automatically entitle [Plaintiff] to disability benefits . . . ."  *Vance v. Commissioner*, 260 Fed. App'x 801, 806 (6th Cir. 2008) (emphasis in original).  In addition, even though "there are no objective tests which can conclusively confirm the disease . . . [there] is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness."  *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988).

Where, as here, the "medical evidence presented to the ALJ . . . contains no such diagnosis that would support the inference of severe pain from fibromyalgia," the ALJ's conclusion that Plaintiff is not disabled is supported by substantial evidence.  *Gammicchia v. Commissioner*, No. 07-12097, 2008 WL 4225779, at *2 (E.D. Mich. Sept. 10, 2008).  Plaintiff acknowledges that a diagnosis of fibromyalgia requires testing and a finding of acute tenderness in 11 out of 18 focal points, *see Huffaker v. Metropolitan Life Ins. Co.*, 271 Fed. App'x 493, 500 n.2 (6th Cir. 2008) (noting that "the rule of thumb is that the patient must have at least 11 of them [18 fixed location tender spots] to be diagnosed as having fibromyalgia"); *Rogers v. Commissioner*, 486 F.3d 234, 244 (6th Cir. 2007) (fibromyalgia is diagnosed and assessed by testing "a series of focal points for tenderness"), and argues that "these criteria were confirmed" by Dr. Yahia who "noted exquisitely tender trigger points[,]" citing page 252 of the transcript.  (Doc. 17 at 4.)

However, Plaintiff fails to quote Dr. Yahia's complete statement that Plaintiff had "exquisite tenderness in both sacroiliac joints" and that "[t]he rest of her physical examination [was] essentially unremarkable."  (Tr. at 252.)  Tenderness in both sacroiliac joints does not provide sound medical evidence of disabling fibromyalgia under Plaintiff's own criteria or those set forth in the relevant case law.  In addition, Dr. Baneri found no physical findings that supported

17

the diagnosis of fibromyalgia.  (Tr. at 335.)  Therefore, I suggest this contention does not undermine the ALJ's findings.

The hypothetical limited Plaintiff's RFC to jobs that are "very simple and routine in nature, not requiring more than a very few steps in the completion of the assigned tasks, as well as being low in stress" and "never requir[ing] her to lift over five pounds[.]"  (Tr. at 415.)  The RFC assessment concluded that Plaintiff "can do simple tasks in a work setting."  (Tr. at 189.)  In addition, although Dr. Shah indicated that Plaintiff could occasionally lift up to ten pounds, the ALJ limited the hypothetically more narrowly by limiting potential lifting to five pounds.  (Tr. at 341 (Dr. Shah); 415 (ALJ).)  In addition, although Dr. Shah concluded that Plaintiff could stand for four hours during an eight-hour workday, the hypothetical presupposed a sedentary job.  (Tr. at 341 (Dr. Shah); 415 (ALJ).)  The ability to push and pull without limitation as included in the RFC and hypothetical is supported by the test results reported by Drs. Lazo and Baneri which indicated no impairment in grip strength or arm strength and which found no muscular wasting as well.  (Tr. at 258-60, 334-35.)  I therefore suggest that the hypothetical accurately incorporated medically-supported abilities and limitations.

I further suggest that the RFC incorporated in the hypothetical posed by the ALJ is supported by substantial evidence because the RFC was not contradicted by any objective medical evidence in the record.  *Finchum v. Astrue*, No. 3:07-cv-254, 2008 WL 3914452 (E.D. Tenn. Aug. 20, 2008) (finding RFC determination supported where there were no specific restrictions in Plaintiff's medical records that contradicted the ALJ's RFC determination and where limitations in medical evidence were incorporated into hypothetical).

Finally, I suggest that the ALJ gave sufficient reasons for discounting Plaintiff's credibility and that these findings are supported by substantial evidence contrary to Plaintiff's assertion.

(Doc. 11 at 14-16.)   Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain.  The plaintiff must establish an underlying medical condition and there either must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.  20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).

If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms.  20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70.  In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living.  *Id.*  When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses.  *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999).  An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  I note that because of the nature of fibromyalgia and its symptoms, application of the usual analysis is difficult.  *Swain v. Commissioner*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003).  Under these standards, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

I further suggest that the ALJ properly discounted Plaintiff's subjective complaints of disabling pain because she undertook substantial gainful employment after the date she stated her disability began.  *See Merida v. Astrue*, No. 6:08-09-DCR, 2008 WL 4410152, at *6 (E.D. Ky. Sept. 19, 2008) (holding that ALJ properly discounted physician's findings based on Plaintiff's subjective complaints where ALJ found Plaintiff was not credible because she claimed disability beginning in 2003 but she worked full-time between March 2006 and August 2007).  In this case, although Plaintiff asserted disability beginning in June 2000, she worked full-time for a year and a half from January 2002 until April 2003.

Finally, I suggest that the ALJ's findings accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, as well as the daily activities described by Plaintiff herself, i.e., that she does not have any problems bathing, dressing, or feeding herself on normal days, that she does laundry and washes dishes about once a week, that she grocery shops with her husband, watches television, and was able to lift approximately 25-pound file boxes while working at H&R Block in 2003.  (Tr. at 109, 148, 402, 410.)  *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

 s/ Charles E Binder

CHARLES E. BINDER
Dated: February 12, 2009          United States Magistrate Judge

### **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served upon counsel of record via the Court's ECF system, and served on U.S. District Judge Friedman in the traditional manner.

Date: February 12, 2009          By     s/Patricia T. Morris
                                    Law Clerk to Magistrate Judge Binder

21