UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATRINA BROWN GILLESPIE,

                Plaintiff,                        Civil Action No.
                                              08-CV-13233

vs.

                                              HON. BERNARD A. FRIEDMAN

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/

**OPINION AND ORDER REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR AN AWARD OF BENEFITS**

Katrina Brown Gillespie ("Plaintiff") has brought the present action pursuant to 42 U.S.C. § 405(g) to challenge a final decision of the Commissioner of Social Security ("Defendant") denying her application for Social Security disability benefits. On February 12, 2009, Magistrate Judge Charles E. Binder submitted a Report and Recommendation ("R&R") in which he recommends that Defendant's Motion for Summary Judgment be granted and Plaintiff's Motion for Summary Judgment be denied. Plaintiff has filed timely objections to the R&R. The Court reviews *de novo* those portions of the R&R to which a specific objection has been made. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

Plaintiff claims that she has been unable to work since April 4, 2003, due to severe pain associated with fibromyalgia syndrome, among numerous other impairments.[1] *See* Tr. 28, 78.

---

[1] The ALJ found that Plaintiff

has the following severe combination of impairments: fibromyalgia; status post cholecystectomy; major depressive disorder; chronic arthralgias; myalgias; fatigue; malaise; and obesity; migraine headaches,

Plaintiff last worked as a "back office operator" at H&R Block doing "a lot of data entry and reconciliation files" along with "computer work and phone work and filing, . . . typical office work." Tr. 401.

A hearing before the Administrative Law Judge ("ALJ") was held on May 1, 2006. Plaintiff, who was 26 years old at the time of the hearing, testified that she "had problems getting out bed, taking care of basic, basic functions of daily living," that she "couldn't wash [her] hair," and "sometimes . . . had problems getting to the toilet." Tr. 402. Plaintiff further testified that she "can sit for about an hour, maybe a little bit more, maybe a little bit less," and that she has "pain throughout [her] neck, shoulders, hips, back, and sometimes knees." Tr. 405. Plaintiff indicated that she could stand for about ten minutes, at which point her "knees would get weak" and buckle, and she would "probably fall down if [she] didn't sit down." *Id.* Plaintiff stated that she could walk about 150 yards but only 50 yards on a bad day and that if she tries to bend or stoop, she usually loses her balance and falls. *Id*. Plaintiff testified that her pain is exacerbated with "[a]ny type of physical activity beyond gentle moving or swaying" or "any type of repetitive motion or moving anything probably more than about seven or eight pounds." Tr. 407. On normal days, Plaintiff testified that she does not need help bathing, but on bad days, "it's hard for me to lift my arms up above about shoulder height, so it's impossible to wash my own hair on those days." Tr. 410. When asked about her ability to perform housework, Plaintiff stated: "[a]bout once a week, on a good day, I can do about one load of dishes in the dishwasher" or one load of wash. *Id.* As explained by

---

tempomandibular joint syndrome, Raynaud's Phenomenon; bipolar disorder; pain disorder associated with psychological factors; bipolar disorder Type I with psychotic features; panic attacks; and chronic post traumatic stress disorder.

Tr. 28.

Plaintiff, "I might do a load of dishes one week, and then the next week, when I'm having a good day, I'll do the laundry." *Id.* Plaintiff stated that she "might be able to make supper one night." *Id.*

After considering the documentary evidence and the hearing testimony, including Plaintiff's testimony and that of a vocational expert, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act because she is capable of performing a limited range of unskilled entry level sedentary work. *See* Tr. 30-37. The Magistrate Judge concluded that the decision of the ALJ is supported by substantial evidence and is "well within that 'zone of choice within which decisionmakers may go either way without inference from the courts,' as the decision is supported by substantial evidence." R&R at 20 (citation omitted).

In reviewing the denial of Social Security disability insurance benefits, this Court's role is limited to determining whether Defendant's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g). More specifically, the Sixth Circuit has described the appropriate standard of review as follows:

> When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. Instead, we consider the ALJ's decision determinative if there is "such relevant evidence as a reasonable mind might accept" as sufficient to support the ALJ's conclusion. The substantial evidence standard is less exacting than the preponderance of evidence standard. If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.

*Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citations omitted).

The procedural history of this case, governing law, administrative record, and findings of the ALJ are fully summarized in the R&R and need not be repeated in detail here. The Court has reviewed the entire administrative record, the Magistrate Judge's R&R, the parties' briefs, and Plaintiff's objections. Having done so, the Court finds three main problems with Defendant's

decision.  First, the ALJ's decision to discount Plaintiff's credibility is not supported by substantial

evidence.  Second, the ALJ failed to give the opinions of Plaintiff's treating physicians proper

weight.  Third, the hypothetical question on which the ALJ relied was flawed and therefore

unreliable.  Accordingly, the Court will reject the Magistrate Judge's R&R and remand this matter

for an award of benefits.

A.  *Plaintiff's Credibility*

In the present case, the ALJ concluded as follows regarding Plaintiff's credibility:

> After considering the evidence in the record, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be expected
> to produce the alleged symptoms, but that the claimant's statements
> concerning the intensity, duration and limiting effects of these symptoms are
> not entirely credible.

Tr. 34.  Plaintiff believes that "the ALJ's credibility determination failed to consider the record in

its entirety" and that the ALJ's adverse credibility determination is not supported by substantial

evidence.  (*See* Pl.'s Objections at 3.)  Plaintiff also states that the Magistrate Judge erred in

concluding that "the ALJ gave sufficient reasons for discounting Plaintiff's credibility and that these

findings are supported by substantial evidence . . ."  *See* R&R at 18.  The Court agrees.

According to the Sixth Circuit,

> [i]t is of course for the ALJ, and not the reviewing court, to evaluate
> the credibility of witnesses, including that of the claimant.  However, the ALJ
> is not free to make credibility determinations based solely upon an
> "intangible or intuitive notion about an individual's credibility."  Rather,
> such determinations must find support in the record. Whenever a claimant's
> complaints regarding symptoms, or their intensity and persistence, are not
> supported by objective medical evidence, the ALJ must make a determination
> of the credibility of the claimant in connection with his or her complaints
> "based on a consideration of the entire case record."  The entire case record
> includes any medical signs and lab findings, the claimant's own complaints
> of symptoms, any information provided by the treating physicians and others,
> as well as any other relevant evidence contained in the record. Consistency
> of the various pieces of information contained in the record should be

4

scrutinized.  Consistency between a claimant's symptom complaints and the
other evidence in the record tends to support the credibility of the claimant,
while inconsistency, although not necessarily defeating, should have the
opposite effect.

Social Security Ruling 96-7p also requires the ALJ explain his
credibility determinations in his decision such that it "must be sufficiently
specific to make clear to the individual and to any subsequent reviewers the
weight the adjudicator gave to the individual's statements and the reasons for
that weight."  In other words, blanket assertions that the claimant is not
believable will not pass muster, nor will explanations as to credibility which
are not consistent with the entire record and the weight of the relevant
evidence.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-248 (6th Cir. 2007) (citations and footnote

omitted).

The ALJ gave three reasons for discounting Plaintiff's credibility.  Two of the

reasons relate to what the ALJ perceived to be inconsistent statements made by Plaintiff.  The first

perceived inconsistency is explained by the ALJ as follows:

[t]he claimant stated that she only drives to the pharmacy rarely because she
needs "help getting in and out of [her] car" and "she also need[s] help
standing and walking" yet she stated that she "get[s] out as quick as [she]
can."  The claimant's statement seems to be contradictory because with the
amount of pain she alleges it would appear that she would have difficultly or
be unable to do anything quickly.

Tr. 34 (citation omitted).  After carefully reviewing the record, the Court concludes that the ALJ has

grossly misinterpreted Plaintiff's testimony.  On the one hand, Plaintiff wrote that she needs help

"getting in and out of [the] car" and "standing and walking" in response to a question asking her to

explain why she does not go out.  *See* Tr. 150.  On the other hand, in response to a question asking

her how often she shops and how long it takes, Plaintiff wrote that she goes shopping "rarely" and,

as for how long it takes, "I get out as quick as I can."  *Id*.  As Plaintiff explains in her

objections—and the Court fully agrees—Plaintiff's statement that she "get[s] out as quick as [she]

5

can" has nothing to do with getting in and out of a car; rather, it has to do with the amount of time she spends shopping.  But regardless of context, Plaintiff's statement that she does something "as quick as [she] can" is not the same as doing it quickly.  The ALJ's rigid interpretation of Plaintiff's testimony is unreasonable and erroneous under even the most deferential standard of review. Because a reasonable mind could not accept the inconsistency perceived by the ALJ as a reason to discount Plaintiff's credibility, the ALJ's decision to discount Plaintiff's credibility on that basis was not supported by substantial evidence.

The second inconsistency perceived by the ALJ is equally unreasonable.  The ALJ concluded that Plaintiff's testimony was inconsistent because Plaintiff "testified that she is not able to concentrate; and it is hard to stay focused, yet she watches television daily, which requires at least some ability to concentrate."  Tr. 34 (citation omitted).  The Court is again perplexed because, as Plaintiff points out in her objections, Plaintiff also stated that while the television is "always on," she "couldn't hardly ever tell you what's actually playing" and that "[i]f [she] do[es] know what's actually on the TV, by the time the commercial comes on, [she] forgot what we were watching." Tr. 412.  Because Plaintiff never explicitly or implicitly said that she is able to concentrate when she watches television (and in fact her testimony is just the opposite), there is no inconsistency in Plaintiff's statements.  *See Bass*, 499 F.3d at 509 ("explanations as to credibility which are not consistent with the entire record" are not sufficient).

The third reason given by the ALJ in support of his decision to discount Plaintiff's credibility stems from the "Psychiatric/Psychological Medical Report" of Ms. Shelley Galasso Bonanno, M.A., a master's level limited licensed psychologist.  Ms. Bonanno wrote in her report of March 28, 2004, that, "[a]t times, [Plaintiff] appeared to exaggerate her symptoms." *See* Tr. 329. The Court has examined Ms. Bonanno's report and finds that this statement does not justify the

6

ALJ's decision to discount Plaintiff's credibility for four independent reasons. First, the observation

is isolated and vague inasmuch as Ms. Bonanno never explains why she believes her observation

to be true, what she means by it, or which symptoms she believes to be exaggerated. Second, the

statement is qualified. Third, the statement is inconsistent with the medical opinions of Plaintiff's

treating physicians, as more fully discussed below. Fourth, the remark predated the ALJ's decision

by more than two years.

The Court concludes that the ALJ's decision to discount Plaintiff's credibility was

unreasonable and not supported by substantial evidence. As such, Plaintiff's testimony regarding

the severity of her symptoms stands unrebutted.

B.      *Plaintiff's Treating Physicians*

As recently summarized by the Sixth Circuit, under what is known as the "treating

source" rule,

> the ALJ must "'give good reasons' for not giving weight to a treating
> physician in the context of a disability determination." Pursuant to this rule,
> "if the opinion of the treating physician as to the nature and severity of a
> claimant's conditions is 'well-supported by medically acceptable clinical and
> laboratory diagnostic techniques and is not inconsistent with other substantial
> evidence in [the] case record,' then it will be accorded controlling weight.
> "When the treating physician's opinion is not controlling, the ALJ, in
> determining how much weight is appropriate, must consider a host of factors,
> including the length, frequency, nature, and extent of the treatment
> relationship; the supportability and consistency of the physician's
> conclusions; the specialization of the physician; and any other relevant
> factors." "However, in all cases there remains a presumption, albeit a
> rebuttable one, that the opinion of a treating physician is entitled to great
> deference, its non-controlling status notwithstanding." "It is true, however,
> that the ultimate decision of disability rests with the administrative law
> judge."

*White v. Comm'r of Soc. Sec.*, 2009 WL 454916, at *7 (6th Cir. Feb. 24, 2009).

Plaintiff has been examined and treated by a number of physicians since the onset

of her alleged disability.  The detailed findings of each physician are adequately summarized by the

ALJ in his opinion, *see* Tr. 34-36, and by the Magistrate Judge in his R&R, *see* R&R at 7-13.  The

Court notes that Plaintiff's treating physicians concluded that Plaintiff is unable to work at any job.

*See* Tr. 280-283 (wherein Dr. Thomas S. Piazza, M.D. concluded in September and December 2003

that Plaintiff was "house confined," and that she cannot work at any job due to fibromyalgia because

she was "very weak / tired," had "painful large muscles throughout [her] body," and has been

"deteriorating since April 2003"); Tr. 360 (wherein Dr. William Vornberger, M.D. concluded on

October 14, 2004, that Plaintiff cannot work at any job due to "chronic and debilitating pain and

fatigue" associated with fibromyalgia and that she "has a medical need for assistance" with basic

personal care activities including eating, toileting, bathing, grooming, etc.); Tr. 343 (wherein Dr.

Amar R. Shah, M.D. concluded on March 14, 2006, that Plaintiff's "debilitating conditions," which

include "fibromyalgia, endometriosis, migraine headaches, TMJ syndrome, Raynaud's Phenomenon,

bipolar disorder and depression," "prevent her from working in a full-time or part-time employment

secondary to her chronic pain, and repeated exacerbation despite medications, physical therapy, and

referrals to multiple medical specialties").  The ALJ accorded little to no weight to the disability

opinions of Drs. Piazza, Vornberger, and Shah because "the issue of disability is an opinion reserved

to the Commissioner."  *See* Tr. 35-36.  As stated by the ALJ,

> [t]here is nothing to indicate that Drs. Piazza, Vornberger and Shaw [sic[2]] are
> cognizant of the functional capacities required for performance of all the jobs
> that exist in the national economy, so they are not patently qualified to draw
> such conclusions even if they were aware of the statutory definition of
> "disability."  This disability determination responsibility has been given by
> Congress to the Secretary (and redelegated to the Administrative Law Judge)
> and not to the claimant's physicians, Drs. Piazza, Vornberger and Shaw.  In

---

[2] The record does not reflect that Plaintiff was ever seen by a "Dr. Shaw."  The Court
assumes that the ALJ meant Dr. Shah and not "Dr. Shaw."

making such a determination, the Administrative Law Judge is required by the decisions to elicit evidence on the issue of "substantial gainful employment" by testimony of a vocational expert. Such testimony must be grounded on medical findings and other evidence of claimant's residual functional capacity, and mere conclusions by physicians, such as Drs. Piazza, Vornberger and Shaw, are not sufficient or helpful.

Tr. 36 (citations omitted). However, the ALJ accorded "great weight" to the functional limitations indicated by Drs. Piazza and Shah.[3]  *See* Tr. 35-36.

Although it is certainly true that "the ultimate decision of disability rests with the administrative law judge," there remains a rebuttable presumption "that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *See White*, 2009 WL 454916, at *7. Further, the ALJ must "'give good reasons' for not giving weight to a treating physician in the context of a disability determination." *Id*. (citation omitted). Courts "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [courts] will continue remanding when [they] encounter opinions

---

[3] As summarized by the ALJ, the functional limitations found by Dr. Piazza include the following: Plaintiff (1) "must be able to rest at will with no bending, lifting, stooping, pushing or pulling," (2) "had an inability to walk more than 200 feet without having to stop and rest due to fibromyalgia," (3) "needed someone to accompany her to her medical appointments to get in and out of her vehicle," (4) "needed medical assistance with personal care activities such as eating, toileting, bathing, grooming, dressing, transferring, mobility, taking medications, meal preparation, shopping/errands, laundry and housework," (5) "could only occasionally lift up to five pounds and never more than five pounds with no standing or walking," (6) "was only able to sit for one to two hours per day," (7) "had problems with memory." Tr. 35.

As summarized by the ALJ, the functional limitations found by Dr. Shah include the following: Plaintiff (1) "could stand for four hours," (2) could . . . walk four city blocks in 30 minutes," (3) "could . . . sit for two hours," (4) "could lift 10 pounds occasionally," (5) "had limitations in bilateral manual dexterity," (6) "would have difficulty performing tasks involving repetitive use of her arms or hands," (7) "would miss [work] four or more times a month," and (8) "was extremely weak in her upper and lower extremities and her pain was exacerbated with repeated tasks." Tr. 36.

from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (cited with approval by the Sixth Circuit, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004)).

In the present case, the ALJ has not given "good reasons" for not giving weight to the disability determinations of Drs. Piazza, Vornberger, and Shah. For example, the ALJ found "Dr. Piazza's opinions on the issue of disability" to be "contradictory." Tr. 35. As stated by the ALJ, "[o]n the one hand, [Dr. Piazza] states [Plaintiff] was disabled while on the other hand, he states she is functionally limited." *Id.* The ALJ does not go into more detail as to exactly why he deemed Dr. Piazza's opinions to be contradictory. The Court interprets Dr. Piazza's findings as entirely consistent inasmuch as Dr. Piazza described Plaintiff's various limitations (i.e., she is "house confined," she "[n]eeds to be able to rest at will," "no lifting, pushing or pulling," etc.) and concluded that she is unable to work at any job. Having thoroughly reviewed Dr. Piazza's medical findings, the Court is simply unable to see how they are inconsistent in any respect.

C.    *The Hypothetical Question*

Further, substantial evidence for the ALJ's decision is lacking because one of Plaintiff's treating physicians, Dr. Shah, identified greater restrictions on Plaintiff's ability to work than those incorporated into the hypothetical question posed to the vocational expert despite the fact that the ALJ found these very restrictions to be deserving of "great weight." In the present case, the ALJ determined that Plaintiff is unable to perform any past relevant work. *See* Tr. 37. Once the ALJ made this determination, "the burden shifted to the Secretary to show that [P]laintiff possesses the capacity to perform other substantial gainful activity that exists in the national economy." *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). According to the Sixth Circuit,

> [t]o meet the burden of showing that [a claimant] could perform work that is available in the national economy, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"

*Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (citations omitted).

In the present case, the hypothetical question posed to the vocational expert contained the following restrictions: (1) nothing more than a sedentary or sit-down type job, (2) never requiring Plaintiff to lift more than five pounds, (3) no unprotected heights, (4) no driving or climbing, (5) no work around dangerous or hazardous materials, (6) jobs that would be simple and routine in nature, (7) "not requiring more than a very few steps in the completion of assigned tasks," (8) low stress, and (9) limited contact with people.  In response to this question, the vocational expert identified 9,000 "bench-type" operation jobs state-wide (e.g., "packaging, sorting, inspection, and assembly") and 14,000 "[s]ervice occupation[]" positions state-wide (e.g., "gate tender, badge checker, information clerk, and a security monitor").  *See* Tr. 415.  However, Dr. Shah's findings regarding Plaintiff's functional limitations, which were accepted and given "great weight" by the ALJ, contained far greater limitations than the ones incorporated into the hypothetical question.  As articulated by the ALJ, Dr. Shah determined that

> [Plaintiff] could stand for four hours; walk four city blocks in 30 minutes and sit for two hours.  If [Plaintiff] were employed full time job [sic] she would need to take unscheduled breaks six to seven times a day for 15 minutes and she would need to lie down. [Dr. Shah] felt that [Plaintiff] could lift 10 pounds occasionally.  Dr. Shaw [sic] reported that [Plaintiff] had limitations in bilateral manual dexterity and that she would have difficulty performing tasks involving repetitive use of her arms and hands.  She was likely to have good and bad days and would miss four or more times a month.  She was extremely weak in her upper and lower extremities and her pain was exacerbated with repeated tasks.

11

Tr. 36.  The ALJ accorded these findings "great weight," *see id.*, yet he inexplicably failed to incorporate some of them into the hypothetical question posed to the vocational expert.  Critically, the hypothetical question mentions nothing about "unscheduled breaks six to seven times a day for 15 minutes" where Plaintiff "would need to lie down," nor does it mention having to "miss [work] four or more times a month."  *See id.*  Moreover, the hypothetical question does not include the limitation that Plaintiff can sit for only two hours.[4]  *See id.*  Because the hypothetical question relied upon by the ALJ was flawed, the vocational expert's response thereto cannot be used to carry Defendant's burden of proving the existence of jobs which Plaintiff can perform.  *See Varley*, 820 F.2d at 779 ("[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments'" (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).  Without belaboring the obvious, once the ALJ accorded "great weight" to the functional limitations found by Dr. Shah, the ALJ was not free to arbitrarily select some of those restrictions for inclusion in the hypothetical question while inexplicably omitting others.

In sum, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because the adverse credibility finding was unreasonable and the hypothetical question posed to the vocational expert did not include functional limitations which the ALJ found are entitled to "great weight."  *See* Tr. 36.

The only remaining question is whether this matter should be remanded for further

---

[4] According to Defendant's own regulations, "a sedentary job is defined as one which involves sitting . . ."  20 C.F.R. § 404.1567(a).

consideration or for an award of benefits.  According to the Sixth Circuit,

> [i]f a court determines that substantial evidence does not support the
> Secretary's decision, the court can reverse the decision and immediately
> award benefits only if all essential factual issues have been resolved and the
> record adequately establishes a plaintiff's entitlement to benefits . . . . A
> judicial award of benefits is proper only where the proof of disability is
> overwhelming or where the proof of disability is strong and evidence to the
> contrary is lacking.

*Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

In this case, the Court concludes that "proof of disability is overwhelming " and that

"evidence to the contrary" is virtually non-existent.[5]  *See id.*  In fact, the Court finds the evidence

in this case so one-sided that reasonable minds could reach only one conclusion.    Plaintiff's

testimony regarding the severity of her symptoms stands unrebutted because the record contains no

evidence, much less substantial evidence, supporting the ALJ's adverse credibility determination.

Moreover, Plaintiff's treating physicians—most notably, Drs. Piazza and Shah—are in agreement

that Plaintiff cannot work.  *See* Tr. 280-283, 343.  The record contains no substantial evidence to

---

[5] Aside from the evidence discussed above, the only other opinion that is arguably
damaging to Plaintiff's case is that of Dr. L. Banerji, M.D.  Dr. Banerji examined Plaintiff in
April 2004 at the request of the Family Independence Agency and noted that although Plaintiff
has an "[a]lleged history of fibromyalgia," "[t]here are no significant findings noted from this
problem during this examination."  Tr. 335.  According to the Sixth Circuit, "[t]he process of
diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2)
the ruling out of other possible conditions through objective medical and clinical trials." *Rogers*,
486 F.3d at 244.  Nothing in Dr. Banerji's report suggests that he attempted to diagnose
fibromyalgia in accordance with the proper procedure.  Moreover, Dr. Banerji's conclusion is
inconsistent with the opinions of several other treating physicians who have diagnosed
fibromyalgia, including those of Dr. Samir R. Yahia, M.D., a rheumatologist (the correct
specialty for fibromyalgia, *see id.* at 245).  *See* Tr. 280-283 (wherein Dr. Piazza diagnosed
Plaintiff with fibromyalgia); Tr. 360 (wherein Dr. Vornberger diagnosed Plaintiff with
fibromyalgia); Tr. 343 (wherein Dr. Shah diagnosed Plaintiff with fibromyalgia); Tr. 252
(wherein Dr. Yahia diagnosed Plaintiff, on April 23, 2003, with "[f]ibromyalgia, severe with
acute exacerbation most likely brought on by some kind of emotional overlay," noting that
Plaintiff "has exquisitely tender trigger points . . .").  As noted above, even the ALJ found that
Plaintiff has fibromyalgia.

the contrary.  In addition, the ALJ failed to incorporate several extremely restrictive functional

limitations into the hypothetical question posed to the ALJ – the very same limitations he accorded

"great weight." Because the record contains no evidence supporting the ALJ's conclusion that

Plaintiff is physically capable of performing even sedentary work, the Court will remand to

Defendant for an award of benefits.[6]

        Accordingly,

        IT IS ORDERED that the Magistrate Judge's R&R of February 12, 2009, is rejected.

        IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment

[docket entry 14] is denied.

---

[6] Finally, the Court notes this is a case involving fibromyalgia and that the Sixth Circuit has held that the rules governing such cases are unique:

> On at least one occasion, we have recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. *See Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (per curiam) (noting that objective tests are of little relevance in determining the existence or severity of fibromyalgia); *see also Swain v. Comm'r of Soc. Sec.*, 297 F. Supp.2d 986, 990 (N.D. Ohio 2003) (observing that "[f]ibromyalgia is an 'elusive' and 'mysterious' disease" which causes "severe musculoskeletal pain"). Rather, fibromyalgia patients "manifest normal muscle strength and neurological reactions and have a full range of motion." *Preston*, 854 F.2d at 820.  The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.*; *Swain*, 297 F. Supp.2d at 990.

*Rogers*, 486 F.3d at 243-244 (footnote omitted).  Moreover, "given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Id.* at 248. The Court questions whether Plaintiff's claim has been adjudicated in accordance with these rules, as the ALJ entirely fails acknowledge the existence of the special rules mentioned above.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [docket entry 11] is granted.  This matter is remanded to Defendant for an award of benefits.


S/Bernard A. Friedman_____

Dated: April 2, 2009_____                BERNARD A. FRIEDMAN
      Detroit, Michigan                      SENIOR UNITED STATES DISTRICT JUDGE